# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

LISA A. GRATTAN,

               Plaintiff,

    v.

DAVID A. HANDLER;
and DAVID A. HANDLER, P.C.,

               Defendants.

Civil Action No. 19-14373 (JMV) (MF)

*Document electronically filed*

Motion Date: October 7, 2019

---

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

---

Brian J. McMahon, Esq.
Samuel I. Portnoy, Esq.
John D. Haggerty, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Defendants David A. Handler
and David A. Handler, P.C.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

LEGAL ARGUMENT ....................................................................................................... 5

I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO SUFFICIENTLY PLEAD PROXIMATE CAUSATION OF DAMAGES .......... 7

A. The Complaint Does Not Plead the Necessary Causal Connection Between Defendant's Alleged Conduct and Plaintiff's Alleged Harm ................................ 7

1. The Two "Forged" Debt Instruments ........................................ 9

2. The Allegations In Connection with the Pending Divorce Action Between Plaintiff and Moriarty ............................... 12

3. Various Additional Alleged Violations of the Rules of Professional Conduct ........................................................ 13

B. The Complaint Also Fails to Plead Cognizable Damages .................................. 14

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2175 Lemoine Ave. Corp. v. Finco, Inc.*,
   272 N.J. Super. 478 (App. Div. 1994) ...............................................................7, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................5, 6

*Baraka v. McGreevey*,
   481 F.3d 187 (3d Cir. 2007)................................................................................10

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006)..................................................................................3

*CCC Atl., LLC v. Silverang*,
   No. 18-17433 (RBK), 2019 WL 3334797 (D.N.J. July 25, 2019)................................. *passim*

*Conklin v. Hannoch Weisman.*,
   145 N.J. 395 (1996) ..........................................................................................8

*Contel Glob. Mktg., Inc. v. Dreifuss*,
   2010 WL 374946 (N.J. Super. App. Div. Feb. 4, 2010) ...........................................8

*Cottone v. Fox Rothschild, LLP*,
   No. A-0420-12T4, 2014 WL 4287002 (N.J. Super. Ct. App. Div. Sept. 2,
   2014) ..............................................................................................10, 14, 15

*Diaconu v. Skyline Transp.*,
   514 F. App'x 94 (3d Cir. 2013) ..............................................................................16

*Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
   No. 02-C-9303, 2004 WL 1404010 ......................................................................3

*Ennenga v. Starns*,
   No. 06-50117, 2009 WL 10677030 (N.D. Ill. July 16, 2009), *aff'd*, 677 F.3d
   766 (7th Cir. 2012)............................................................................................16

*Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007)..................................................................................6

*Fisher v. Igwe*,
   No. 17-5983 (RBK), 2018 WL 1317860 (D.N.J. Mar. 14, 2018)................................9

*Flaherty-Weibel v. Morris, Downing & Sherred*,
   384 F. App'x 173 (3d Cir. 2010) ..........................................................................14

*Froom v. Perel*,
   377 N.J. Super. 298 (App. Div. 2005) ..............................................................7, 13

*Goldenberg v. Indel, Inc.*,
   741 F. Supp. 2d 618 (D.N.J. 2010) ...................................................................6, 11

*Granata v. Broderick*,
   446 N.J. Super. 449 (App. Div. 2016), *aff'd*, 231 N.J. 135 (2017)........................14

*Green v. Morgan Props.*,
   215 N.J. 431 (2013) ...........................................................................................14

*Innoas Inc. v. Vista Capital, LLC*,
   No. 17-12436 (JLL), 2019 WL 291164 (D.N.J. Jan. 22, 2019)..............................13

*Isserman v. Isserman*,
   2 N.J. 1 (1949) ....................................................................................................3

*Jerista v. Murray*,
   185 N.J. 175 (2005) .............................................................................................7

*Lamb v. Barbour*,
   188 N.J. 6 (1982) ............................................................................................8, 12

*Lopez-Siguenza v. Roddy*,
   No. 13-2005 (JBS), 2014 WL 4854452 (D.N.J. Sept. 30, 2014)..............................9

*Mahoney v. McDonnell*,
   616 F. App'x 500 (3d Cir. 2015) .........................................................................14

*McGrogan v. Till*,
   167 N.J. 414 (2001) .............................................................................................7

*Nat'l Grange Mut. Ins. Co. v. Goldstein, Heslop, Steel, Clapper, Oswalt & Stoehr*,
   142 F. App'x 117 (3d Cir. 2005) .........................................................................15

*Okpor v. Legome*,
   No. 15-191 (JBS), 2016 WL 1163931 (D.N.J. Mar. 24, 2016) ...........................8, 9

*Oraedu v. Anambara-Enugu State Ass'n of NJ, Inc.*,
   No. A-2378-10T4, 2012 WL 1622657 (N.J. Super. Ct. App. Div. May 10,
   2012) .................................................................................................................13

*Pai v. DRX Urgent Care, LLC*,
   No. 13-3558 (JAP), 2014 WL 837158 (D.N.J. Mar. 4, 2014), *aff'd sub nom.*
   *Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485 (3d Cir. 2015) .................6, 11

iii

*Petrillo v. Bachenberg*,
   263 N.J. Super. 472 (App. Div. 1993), *aff'd*, 139 N.J. 472 (1995)...........................................14

*Reilly, Supple & Wischusen, LLC v. Blum*,
   No. A-2618-09T3, 2011 WL 798637 (N.J. Super. Ct. App. Div. Mar. 9, 2011)....................12

*In re Rockefeller Ctr. Properties, Inc. Securities Litig.*,
   184 F.3d 280 (3d Cir. 1999)....................................................................................................11

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010)...............................................................................................6, 10

*Spector Gadon & Rosen, P.C. v. Fishman*,
   666 F. App'x 128 (3d Cir. 2016) ..........................................................................................16

*Tadros v. City of Union City*,
   No. 10-2535 (DMC), 2011 WL 1321980 (D.N.J. Mar. 31, 2011)..........................................16

**Other Authorities**

http://www.bournenoll.com/Lisa-A--Grattan.php ...........................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... *passim*

RPC 1.9(a)...............................................................................................................................13

Defendants David A. Handler and David A. Handler, P.C. (collectively, "Defendant" or "Handler") respectfully submit this Memorandum of Law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"), to dismiss the complaint [ECF No. 1] ("Complaint") of Plaintiff Lisa A. Grattan ("Plaintiff" or "Grattan").

## PRELIMINARY STATEMENT

A *sine qua non* of any legal malpractice claim is a proximate causal connection between the attorney's conduct and the damages allegedly suffered by the client. The Complaint fails to plead it. It is bereft of allegations sufficient to proximately link any specific conduct of the Defendant to any cognizable harm suffered by the Plaintiff. As a result, the Complaint must be dismissed.

Plaintiff alleges that her signature was forged on two loan documents, resulting in her unwittingly incurring millions of dollars of debt. Those alleged acts of forgery are the centerpiece of Plaintiff's claim. But, Plaintiff fails to plead that Defendant had anything to do with that alleged deception. In fact, according to Plaintiff, Defendant simply assisted in the preparation of the loan documents and nothing more. That is plainly insufficient to plead the necessary causal connection between Defendant's alleged conduct and Plaintiff's claimed harm.

Plaintiff's claim is infirm not only for lack of proximate cause, but also for failure to plead any cognizable damages. Even assuming Plaintiff's signatures on the loan documents were forged, Plaintiff alleges only that she received loans at a "favorable interest rate." Plaintiff does not allege that she did not actually receive funds in exchange for incurring this debt, that any payments on the loans were missed, or any resulting diminution in the value of the marital estate or her personal assets. In fact, Plaintiff does not allege ***any*** adverse consequences of any kind as a result of receiving the loans. That failure also warrants dismissal of her claim.

Equally problematic are the patent factual inaccuracies that pervade the Complaint,

1

bespoke by the very documents on which Plaintiff's claim relies.  For example, one of the allegedly forged debt instruments demonstrates on its face that Plaintiff's supposedly "forged" signature was witnessed by a Notary Public who swore to its authenticity.

That very same document also belies Plaintiff's irresponsible and meritless insinuation that Defendant engaged in the unauthorized practice of law in New Jersey.  The document, on its face, makes clear that it was prepared and recorded by New Jersey counsel.  Local counsel admitted to practice in New Jersey was engaged at all relevant times.  That Plaintiff, herself an attorney, would so cavalierly level such a baseless allegation of ethical misfeasance against Defendant calls into question the foundation (or lack thereof) for her allegations generally.

The balance of the Complaint is a scattershot smattering of alleged Rules of Professional Conduct violations.  These allegations suffer from the same fatal defects.  Plaintiff fails to establish that any such RPC violation, assuming any did occur (which Defendant vigorously disputes), proximately caused her any cognizable harm.

One such allegation is that Defendant is improperly assisting Plaintiff's now estranged husband and adversary, Robert Moriarty ("Moriarty"), in what Plaintiff describes as "Union County's oldest divorce action," by acting as Moriarty's expert witness.  Although the allegation is legally insignificant (as discussed in further detail below, Defendant acting as Moriarty's expert, even if true, cannot sustain a legal malpractice claim), it is noteworthy because it may betray the true motivation behind this lawsuit: to somehow gain leverage in Plaintiff's pending divorce proceeding.  Plaintiff's Complaint is ill-conceived, devoid of merit, and should be dismissed without delay.

## FACTUAL BACKGROUND[1]

On or about January 6, 2011, Plaintiff and her now estranged husband, Moriarty, retained Defendant to jointly represent the couple in connection with personal estate planning matters. (Compl. ¶ 11.)  Defendant is a partner at Kirkland & Ellis LLP in Chicago, Illinois and longtime advisor to Moriarty's mother, Mary Eileen Moriarty ("Eileen Moriarty").  (*Id.* ¶ 13.)  Moriarty and his brother, Tim Moriarty, are co-trustees of the Mary Ellen Moriarty Revocable Trust and principal owners of Twin Oaks, L.P., "which manages and invests their mother's assets and non-family member assets."  (*Id.* ¶¶ 15-16.)  Plaintiff is an attorney admitted to practice law in the State of New Jersey.[2]

In January 2011, at the request of Plaintiff and Moriarty, Defendant helped prepare a $3 million line of credit (the "Revolving Credit Agreement") with Eileen Moriarty pursuant to which Moriarty and Plaintiff borrowed money at, in Plaintiff's words, "a favorable interest rate" for the purpose of purchasing a lot and building a summer home in Cutchogue, Long Island.  (*Id.* ¶ 21; Certification of Brian J. McMahon ("McMahon Cert."), Ex. A.[3])  On or about October 28, 2011,

---

[1] Defendant accepts the facts pled in Plaintiff's Complaint as true only for purposes of this Motion and only to the extent those facts are not mere conclusory assertions or are not belied by the documents cited in the Complaint or integral to Plaintiff's claim.

[2] Courts are permitted to take judicial notice of the parties' occupations, which in any event are a matter of public record in the case of licensed attorneys.  *See Isserman v. Isserman*, 2 N.J. 1, 7 (1949) (taking judicial notice "that the husband is a counselor-at-law of" New Jersey); *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02-C-9303, 2004 WL 1404010, at *3 n.2 (determining that the court "may take judicial notice of [the plaintiff's] current employment with [a law firm] based on that firm's publicly available internet web site"); *see also* http://www.bournenoll.com/Lisa-A--Grattan.php.

[3] As explained in further detail *infra*, the documents attached to the McMahon Certification are properly considered on this Motion, as they are expressly referenced in and/or integral to Plaintiff's claim.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'").

"the line of credit was increased by $4.5 million" by way of a one-page amendment to the Revolving Credit Agreement (the "2011 Amendment"). (Compl. ¶ 22; McMahon Cert., Ex. B.) Other than this increase in the aggregate amount that Plaintiff and Moriarty were permitted (but not required) to draw on, the Revolving Credit Agreement remained unchanged. (*Id.*) Plaintiff alleges that her "signature on the [2011 Amendment] was forged." (Compl. ¶ 22.)[4] However, Plaintiff freely admits that she was aware of and voluntary executed the initial Revolving Credit Agreement. (*Id.* ¶ 21.)

In 2012, Plaintiff and Moriarty borrowed an additional $915,000 in the form of a three-year mortgage with Eileen Moriarty, again, according to Plaintiff, "at a favorable interest rate." (*Id.* ¶ 25.) On or about February 26, 2015, at the end of that three-year term, "Moriarty, with Defendants' assistance, arranged to pay off the balance of the [2012] mortgage loan." (*Id.* ¶ 26.) At that same time, a new loan was taken out for the same amount. (*Id.* ¶ 26; McMahon Cert., Exs. D, E.) Plaintiff alleges that her signature on the documents effecting the new loan ("2015 Loan Documents") was also forged. (Compl. ¶ 28.) However, Plaintiffs' signature on the 2015 Loan Documents was witnessed by a Notary Public in New Jersey. (McMahon Cert., Ex. D.) And, the documents were prepared and filed by counsel admitted to practice law in New Jersey. (McMahon Cert., Ex. D.)

In 2016, upon learning of marital issues that arose between Plaintiff and Moriarty, Defendant advised the two that he was withdrawing from their joint representation "in connection with their personal estate planning matters, and indicated that one or both of them could re-hire

---

[4] Defendant notes that much of the alleged conduct that forms the basis for Plaintiff's claim falls outside of the six-year statute of limitations that governs Plaintiff's claim. Although the time-barred nature of Plaintiff's claim is not a basis upon which Defendant seeks dismissal at this time, Defendant expressly reserves that and all other defenses.

[Defendant] if the other consented." (*Id.* ¶ 33.) Plaintiff did not consent to Defendant's continued representation of Moriarty. (*Id.* ¶ 34.) Plaintiff subsequently requested from Defendant a copy of her "complete file," and Defendant furnished to Plaintiff, among other things, copies of the 2011 Amendment and the 2015 Loan Documents. (*Id.* ¶¶ 36, 38-39.) Plaintiff alleges that she was previously "unaware of the debt incurred" by way of those documents and that, "[u]nbeknownst to Plaintiff, the two forged debt instruments caused her to incur millions of dollars of additional debt." (*Id.* ¶¶ 29-30.) Plaintiff alleges no other consequences, adverse or otherwise, resulting from these loans.

Plaintiff and Moriarty are currently adversaries in divorce proceedings initiated by Plaintiff, who describes them as "Union County's oldest divorce action." (*Id.* ¶ 42.) Plaintiff alleges that she "has incurred millions of dollars in legal fees . . . as well as other personal damages" in connection with those pending proceedings. (*Id.* ¶ 42.) Although Defendant is not alleged to be representing Moriarty in the divorce action, Plaintiff alleges that Defendant has been identified as Moriarty's expert witness and has been providing "expert advice and assistance" and "support and coaching of [Moriarty's] divorce position." (*Id.* ¶¶ 40-42.)

On June 27, 2019, Plaintiff filed the instant Complaint. [ECF No. 1.] The Complaint asserts a single count against Defendant, captioned "Professional Negligence and Breach of Fiduciary Duties – Attorney Malpractice." (*Id.*) As set forth below, Defendant respectfully submits that Plaintiff's Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  While the Court must accept all of the complaint's well-pleaded facts as true, it may disregard "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

In adjudicating Rule 12(b)(6) motions to dismiss, the Court may consider not only the allegations of the complaint, but also any documents attached to it, specifically referenced in it, or integral to its claims.  *Family Tr. v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007) (documents that are not attached to a complaint, but which are "explicitly relied upon by the . . . complaint" may be considered without converting a motion to dismiss to a motion for summary judgment"); *Buck*, 452 F.3d at 260 ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'").

Of particular importance to this Motion, if allegations in a complaint are contradicted by the documents relied upon or cited, the documents control.  *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)); *Pai v. DRX Urgent Care, LLC*, No. 13-3558 (JAP), 2014 WL 837158, at *6 (D.N.J. Mar. 4, 2014) ("a court need not accept allegations as true that are contradicted by the documents upon which a party's claims are based"), *aff'd sub nom.*, *Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485 (3d Cir. 2015).

6

I.   **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO SUFFICIENTLY PLEAD PROXIMATE CAUSATION OF DAMAGES**

"At the most fundamental level, the legal-malpractice action provides a remedy for negligent professional performance." *McGrogan v. Till*, 167 N.J. 414, 425 (2001). To plausibly allege a claim of legal malpractice under New Jersey law, a plaintiff must plead three essential elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." *Jerista v. Murray*, 185 N.J. 175, 190-91 (2005) (quotation omitted); *see also CCC Atl., LLC v. Silverang*, No. 18-17433 (RBK), 2019 WL 3334797, at *4 (D.N.J. July 25, 2019) (same). Here, Plaintiff's Complaint does not state a claim as a matter of law because she has failed to plead: (i) any conduct on the part of Defendant that proximately caused her to incur the debt effected by the 2011 Amendment or 2015 Loan Documents; or (ii) any actual cognizable damages resulting from those loans or from any other alleged breach.[5]

A.   **The Complaint Does Not Plead the Necessary Causal Connection Between Defendant's Alleged Conduct and Plaintiff's Alleged Harm**

"The general rule in this State is that an attorney is only responsible for a client's loss if that loss is proximately caused by the attorney's legal malpractice." *2175 Lemoine Ave. Corp. v. Finco, Inc.*, 272 N.J. Super. 478, 487 (App. Div. 1994). To properly plead causation, a plaintiff must allege facts sufficient to "support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury." *CCC Atl., LLC*, 2019 WL 3334797, at *4; *Froom v. Perel*, 377 N.J. Super. 298, 313 (App. Div. 2005). Under this test, allegations of deficient

---

[5] To be clear, Defendant disputes that he has breached any duty owed to Plaintiff. And, as discussed in more detail below, documents at the center of Plaintiff's claim raise very serious doubts regarding Plaintiff's allegations of forgery and ethical breaches. Regardless, because Plaintiff has failed to plead any conduct by Defendant that was the proximate cause of any cognizable harm, the Court may dismiss the Complaint without deciding whether it sufficiently pleads the other elements of Plaintiff's claims.

legal services that caused harm only concurrently with other conduct cannot support a claim. Rather, the defendant's conduct must be a "substantial factor" in bringing about the plaintiff's claimed injury. *CCC Atl., LLC*, 2019 WL 3334797, at *4 ("The test for substantial factor accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence.  The test is thus suited for legal malpractice cases in which inadequate or inaccurate legal advice is alleged to be a concurrent cause to [the] harm.") (citation omitted)).

To satisfy the "substantial factor" test, a plaintiff must plead facts establishing that she "would have been deterred from the undertaking or that the consequences would have been materially different had [she] been properly advised." *Id.* (quoting *Lamb v. Barbour*, 188 N.J. 6, 13 (1982)).  Otherwise, the court cannot conclude "that the attorney's failure substantially contributed to plaintiff's loss." *Id.*

The "substantial factor" test imposes an important and substantial burden on plaintiffs.  For example, "if a lawyer misses a statute of limitations and a complaint is dismissed for that reason," a malpractice claim cannot be sustained unless the plaintiff can also "establish that had the action been timely filed it would have resulted in a favorable recovery." *Okpor v. Legome*, No. 15-191 (JBS), 2016 WL 1163931, at *2 (D.N.J. Mar. 24, 2016) (quoting *Conklin v. Hannoch Weisman*, 145 N.J. 395, 418 (1996)); *see also Contel Glob. Mktg., Inc. v. Dreifuss*, 2010 WL 374946, at *5 (N.J. Super. App. Div. Feb. 4, 2010) (the "mere possibility of causation" is not sufficient).

In light of this standard, it is no surprise that courts in this District routinely dismiss legal malpractice claims where, as here, the plaintiff fails to adequately plead materially adverse consequences resulting specifically from the attorney's alleged misconduct. *See, e.g.*, *CCC Atl., LLC*, 2019 WL 3334797, at *4 (legal malpractice claim dismissed for failure to plead proximate

cause where the complaint did "not support the[] claims with any facts" or "explain to the court how" plaintiff's outcome would have been "materially different had the Defendants acted differently"); *Fisher v. Igwe*, No. 17-5983 (RBK), 2018 WL 1317860, at *4 (D.N.J. Mar. 14, 2018) (dismissing legal malpractice claim where plaintiff "failed to establish a causal connection between Defendants' conduct and the damages she suffered" or "plead any facts tending to show causation"); *Okpor*, 2016 WL 1163931, at *2 (granting motion to dismiss legal malpractice claim because "the allegations are wholly insufficient to establish a causal connection between Defendant's conduct and the damages he suffered"); *Lopez-Siguenza v. Roddy*, No. 13-2005 (JBS), 2014 WL 4854452, at *5 (D.N.J. Sept. 30, 2014) (granting motion to dismiss legal malpractice claim for plaintiff's failure "to sufficiently plead proximate causation of damages," as the complaint only contained "a terse legal conclusion relevant to causation or injury to Plaintiff").

Here, Plaintiff not only fails to plead a sufficient link between Defendant's conduct and any alleged damage, or any materially different outcome that would have resulted had the Defendant acted differently, but actually affirmatively pleads intervening, proximate conduct.

### 1.    The Two "Forged" Debt Instruments

The bulk of Plaintiff's legal malpractice claim is premised on two, purportedly forged, debt instruments: the 2011 Amendment and the 2015 Loan Documents.  Plaintiff alleges that the forged signatures on those documents "caused her to incur millions of dollars of additional debt."  (Compl. ¶ 29.)  But, with respect to Defendant, Plaintiff alleges only that he rendered some unspecified degree of "assistance" in preparing those documents.  Nowhere does she plead that Defendant played any role whatsoever in forging her signature or facilitating any such forgery.  This deficiency alone warrants dismissal of the Complaint.

Although Plaintiff tersely alleges that Defendant "knew or should have known that Plaintiff's signature[s]" were forged (Compl. ¶¶ 24, 28), this is precisely the type of threadbare,

conclusory statement that courts disregard when evaluating the sufficiency of a pleading under Rule 12(b)(6).  *See, e.g.*, *Santiago*, 629 F.3d at 128; *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations").

In any event, Plaintiff's conclusory assertion that Defendant knew or should have known Plaintiff's signature was forged (an allegation that cannot sustain her claim anyway) is belied by the very loan documents on which her claim is based.  It is evident from the face of the 2015 Loan Documents that: (i) Plaintiff's signature was witnessed by a Notary Public in New Jersey who certified under oath that Plaintiff "personally signed" the document; and (ii) the 2015 Loan Documents were prepared and recorded not by Defendant, but by Amie Gartenberg, Esq., local counsel admitted to practice in New Jersey who was engaged at all relevant times.  (McMahon Cert., Ex. D.)

Of course, the involvement of Ms. Gartenberg in connection with the loan documents, and in the matter generally, is important for another reason.  Although not specifically identified as the basis for Plaintiff's claim, Plaintiff has insinuated that Defendant, in preparing these loan documents, engaged in the unauthorized practice of law in New Jersey.  (Compl. ¶ 48.)  It is remarkable that Plaintiff, herself an attorney,[6] would accuse Defendant of an ethical violation in a publicly filed pleading when the very documents on which the allegation is based prove it

---

[6] Plaintiff's status as an attorney, and resulting sophistication, is relevant to this analysis and to whether Defendant's alleged RPC violations breached any duty to her or caused her any harm.  *See Cottone v. Fox Rothschild, LLP*, No. A-0420-12T4, 2014 WL 4287002, at *10 (N.J. Super. Ct. App. Div. Sept. 2, 2014) ("Another relevant circumstance [when determining whether an attorney's conduct meets the applicable standard of care] is the client's sophistication or lack thereof.") (citing *Conklin*, 145 N.J. at 415 ("[S]ome clients may sufficiently understand aspects of a financial transaction . . . so as not to impose [an obligation] on their lawyer to explain the transaction in detail."))).

meritless.  Plaintiff's cavalier approach speaks volumes for the reliability (or lack thereof) of the allegations in the Complaint in general and the caution that should be applied when considering them.

In this regard, Plaintiff's assertion that she was unaware of the loans at issue (Compl. ¶ 30), a crucial allegation on which the viability of her claim depends, is also belied by the very documents on which her Complaint is based.  In the case of the first allegedly forged instrument— the 2011 Amendment—Plaintiff neglects to mention that just one year later she executed another one-page amendment that expressly references the 2011 Amendment.  Indeed, the very first sentence of the subsequent amendment references both the Revolving Credit Agreement and the 2011 Amendment, providing that it is amending the "Revolving Credit Agreement dated as of January 1, 2011 *and amended on October 28, 2011*."  (McMahon Cert., Ex. C) (emphasis added).[7] As for the second allegedly forged instrument—the 2015 Loan Documents—as discussed, a Notary Public certified under oath that Plaintiff "personally signed" it.  (McMahon Cert., Ex. D.)

Put simply, Plaintiff's claims cannot be sustained absent allegations that Defendant had some actual involvement with forging the debt instruments and that Plaintiff was unaware of them. Because the bare allegations provided are fatally conclusory and belied by the very documents on which Plaintiff's claim is based, the Court should not accept them and Plaintiff's Complaint must be dismissed as a result.  *See, e.g.*, *Goldenberg*, 741 F. Supp. 2d at 624 (to the extent documents "contradict the Complaint's factual allegations, the documents will control"); *Pai*, 2014 WL

---

[7] The Second Amendment to the Revolving Credit Agreement is properly considered on this motion because it is integral to Plaintiff's claim, including Plaintiff's allegations that she did not consent to, and was unaware of, the prior amendment to the same contract.  *See In re Rockefeller Ctr. Properties, Inc. Securities Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (a court can consider "a document integral to or explicitly relied upon in the complaint" as well as an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted)).

11

837158, at *6 ("a court need not accept allegations as true that are contradicted by the documents upon which a party's claims are based").

Finally, and perhaps most fundamentally, Plaintiff has not alleged in the Complaint, even in conclusory fashion, that she would not have consented to and signed the documents that she now says were forged had she been presented with them at the time they were executed. The Complaint is bereft of any allegations that any conduct of Defendant would have "deterred" Plaintiff "from the undertaking" or resulted in "materially different" consequences. *CCC Atl., LLC*, 2019 WL 3334797, at *4; *Lamb*, 188 N.J. at 13. Instead, the Complaint pleads facts and references documents that support the precise opposite conclusion. By Plaintiff's own admission, both debt instruments carry a "favorable interest rate" (Compl. ¶¶ 21, 25), and Plaintiff was aware of and admits to executing: (1) the original $3 million Revolving Credit Agreement Plaintiff and Moriarty used to build their Long Island summer home; and (2) the 2012 mortgage that was paid off in full before a new mortgage in the same amount was taken out in 2015. (Compl. ¶¶ 21, 25-26.) Plaintiff's Complaint should be dismissed.

### 2. The Allegations In Connection with the Pending Divorce Action Between Plaintiff and Moriarty

Plaintiff also alleges that Defendant is improperly assisting Moriarty in his pending divorce proceedings with Plaintiff. These allegations are a side show. They are not alleged in support of any actual claim for damages, and would be insufficient to sustain any such claim if they were. Defendant is not even alleged to be representing Moriarty in those proceedings. Plaintiff alleges that Defendant is merely a potential "expert witness" who has provided unspecified "support and coaching of [Moriarty's] divorce position." (Compl. ¶¶ 40-42, 45.) Even if it were true, such conduct cannot support a legal malpractice claim against Defendant. *See Reilly, Supple & Wischusen, LLC v. Blum*, No. A-2618-09T3, 2011 WL 798637, at *1 (N.J. Super. Ct. App. Div.

Mar. 9, 2011) (affirming dismissal of legal malpractice claim asserted against attorney who served as expert witness for adversary); *see also Froom*, 377 N.J. Super. at 310 ("The existence of an attorney-client relationship is, of course, essential to the assertion of a cause of action for legal malpractice."); *Oraedu v. Anambara-Enugu State Ass'n of NJ, Inc.*, No. A-2378-10T4, 2012 WL 1622657, at *3 (N.J. Super. Ct. App. Div. May 10, 2012) ("RPCs 1.7 and 1.9, can apply only upon a showing of an attorney-client relationship with a present or former client that conflicts with *the representation* of another client" (emphasis added)); *Innoas Inc. v. Vista Capital, LLC*, No. 17-12436 (JLL), 2019 WL 291164, at *3 (D.N.J. Jan. 22, 2019) ("RPC 1.9(a) only prohibits a lawyer from taking on *a representation* that is the same or "substantially related" to a matter in which the lawyer represented a former client" (emphasis added)).

To the extent these allegations are relevant at all, it is because they betray what Defendant fears is the true motivation for this Complaint: to disadvantage or otherwise gain leverage over Moriarty in the divorce proceedings and to deter Defendant from helping him in any way. Insofar as Plaintiff believes that Defendant's alleged role as an expert witness in the divorce proceedings is improper, she is, of course, free to seek a remedy in that venue.

### 3. Various Additional Alleged Violations of the Rules of Professional Conduct

Additional violations of various Rules of Professional Conduct are alleged in the Complaint. These allegations are merely a desperate effort to manufacture a basis for Plaintiff's meritless legal malpractice claim. Plaintiff's "let's see what might stick to the wall" approach is unavailing. Like the allegations of misconduct in connection with the divorce proceedings, the additional alleged RPC violations are not linked to any cognizable harm and would be insufficient to sustain a claim even if they were.

"A violation of the New Jersey Rules of Professional Conduct does not [without more]

create a cause of action for legal malpractice." *Mahoney v. McDonnell*, 616 F. App'x 500, 506 (3d Cir. 2015); *see also Flaherty-Weibel v. Morris, Downing & Sherred*, 384 F. App'x 173, 177 (3d Cir. 2010) ("New Jersey law does not recognize an independent cause of action for the violation of the Rules of Professional Conduct."); *Green v. Morgan Props.*, 215 N.J. 431, 458 (2013) ("the assertion that an attorney has violated one of [New Jersey's] ethical rules does not give rise to a cause of action" for legal malpractice); *Petrillo v. Bachenberg*, 263 N.J. Super. 472, 483 (App. Div. 1993) ("an attorney's violation of an ethics rule does not in itself establish a cause of action in tort"), *aff'd*, 139 N.J. 472 (1995)).

Stated differently, even if Plaintiff's allegations regarding Defendant's purported conflicts of interest and violations of RPCs 1.7 and 1.9 were plausibly pled (and they are not), Plaintiff must still adequately allege proximate causation of damages. *See, e.g.*, *Granata v. Broderick*, 446 N.J. Super. 449, 470-71 (App. Div. 2016) ("Even if [attorney] did not advise [client] to seek independent counsel, [client] must still establish proximate cause."), *aff'd*, 231 N.J. 135 (2017); *CCC Atl., LLC*, 2019 WL 3334797, at *4 (dismissing legal malpractice claim premised in part on alleged conflict of interest for failure to sufficiently plead proximate causation of damages). Plaintiff has failed to plead that any of the alleged RPC violations (all of which are vigorously disputed), were the proximate cause of the forgeries on which her claims are based or otherwise played a substantial role in any alleged damage.

### B.    The Complaint Also Fails to Plead Cognizable Damages

Regardless of the sufficiency of Plaintiff's proximate cause allegations (which are hopelessly infirm), Plaintiff's Complaint must also be dismissed for failure to plead any cognizable harm.

In legal malpractice cases, "damages are generally measured by the amount that a plaintiff 'would have received but for the attorney's negligence.'" *Cottone*, 2014 WL 4287002, at *15

(citation omitted).  "The burden is on the client to show what injuries were suffered as a proximate consequence of the attorney's breach of duty" – a burden that "is not satisfied by mere 'conjecture, surmise or suspicion." *2175 Lemoine Ave.*, 272 N.J. Super. at 487-88 (citation omitted).  Thus, an alleged breach of professional duty causing only nominal damages, speculative harm, or the threat of future harm is insufficient to establish a legal malpractice claim.  *Nat'l Grange Mut. Ins. Co. v. Goldstein, Heslop, Steel, Clapper, Oswalt & Stoehr*, 142 F. App'x 117, 121 (3d Cir. 2005); *Cottone*, 2014 WL 4287002, at *15 ("The client must have sustained actual, as opposed to merely speculative, damages.").

Here, Plaintiff has alleged harm that is, at most, entirely speculative and uncertain.  Indeed, Plaintiff's claimed damages are limited to a single allegation in the Complaint: "Unbeknownst to Plaintiff, the two forged debt instruments caused her to incur millions of dollars of additional debt." (Compl. ¶ 29.)[8]   However, Plaintiff does not allege that: (i) any action has been taken on those loans; (ii) the home(s) the loan proceeds were used to finance, "at a favorable interest rate," have reduced in value; (iii) what balance, if any, remains outstanding on either loan[9]; (iv) that any payments required under the terms of the loan were not made; or (v) that any payments pursuant to the 2011 Revolving Credit Agreement were made without Plaintiff's knowledge or consent.

The most that can be determined from Plaintiff's threadbare damages allegations is that the marital estate received assets in exchange for incurring debt that are of equal or potentially greater value than the amount of the debt incurred.  Nowhere in the Complaint does Plaintiff allege that

---

[8] To the extent that Plaintiff is contending that she has been damaged in the form of her legal fees and "other personal damages" suffered in connection with her pending divorce action with Moriarty—an action she initiated—that is self-evidently inapt and not sufficiently linked to any conduct of the Defendant in any event.

[9] The maturity date for the 2015 Secured Promissory Note was February 25, 2018.  (McMahon Cert., Ex. E.)

incurring this debt caused a diminution in the value of the marital estate or otherwise resulted in any adverse consequence to her, whatsoever.  Plaintiff's failure to allege that she suffered any actual, cognizable harm as a result of Defendant's conduct thus provides an additional, independent basis for dismissal of her Complaint.  *See Spector Gadon & Rosen, P.C. v. Fishman*, 666 F. App'x 128, 132 (3d Cir. 2016) (affirming dismissal of legal malpractice claim where plaintiff's "purported harm was . . . entirely too speculative to support a viable claim" because the "purported damages were based on a settlement that was never concluded"); *Diaconu v. Skyline Transp.*, 514 F. App'x 94, 96–97 (3d Cir. 2013) (affirming dismissal of legal malpractice claim where plaintiff "failed to plead any factual basis for her belief that the signature was forged, and, in any event, . . . failed to plead facts that would indicate that she was injured by the alleged forgery"); *Tadros v. City of Union City*, No. 10-2535 (DMC), 2011 WL 1321980, at *9 (D.N.J. Mar. 31, 2011) (granting motion to dismiss legal malpractice claim for failure to sufficiently plead damages); *Ennenga v. Starns*, No. 06-50117, 2009 WL 10677030, at *5-6 (N.D. Ill. July 16, 2009) (concluding that legal malpractice claim premised on drafting of estate planning documents was not viable because of "the speculative nature of the damages alleged"), *aff'd*, 677 F.3d 766 (7th Cir. 2012).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).


Dated:  August 26, 2019                              Respectfully submitted,

                                                     s/Brian J. McMahon
                                                     Brian J. McMahon, Esq.
                                                     Samuel I Portnoy, Esq.
                                                     John D. Haggerty, Esq.
                                                     **GIBBONS P.C.**
                                                     One Gateway Center
                                                     Newark, New Jersey 07102-5310
                                                     Telephone:  (973) 596-4500
                                                     Facsimile:  (973) 596-0545
                                                     bmcmahon@gibbonslaw.com
                                                     sportnoy@gibbonslaw.com
                                                     jhaggerty@gibbonslaw.com
                                                     *Attorneys for Defendants David A. Handler*
                                                     *and David A. Handler, P.C.*